IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>JAMES L. WATTS; JAMES L. WATTS, TRUSTEE OF THE WATTS FAMILY LORTON RESIDENCE TRUST; JAMES L. WATTS, TRUSTEE OF THE WATTS FAMILY QUEENS DRIVE RESIDENT TRUST; WATTS TRUCKING  SERVICE, INC.; A-1 DISPOSAL SERVICE, INC.; BLACK HAWK WASTE DISPOSAL CO., INC.; CEDAR VALLEY RECYCLING AND TRANSFER CO.; COUNTY WASTE SYSTEMS, INC.; HAWKEYE WASTE SYSTEMS, INC.; L & M WASTE SYSTEMS, INC.; METRO WASTE SYSTEMS, LLC; CITY WASTE SYSTEMS, INC.; TRI-STAR WASTE SYSTEMS; INC.; SCOTT COUNTY TREASURER; IOWA DEPARTMENT OF REVENUE<br><br><br>   Defendants. | Case no. 3:11-CV-00116-HDV-TJS |

**FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND FOR OTHER RELIEF**

The plaintiff, United States of America, brings this complaint to (A) enjoin defendants

James L. Watts, Watts Trucking Service, Inc., A-1 Disposal Service, Inc., Black Hawk Waste

Disposal Co., Inc., Cedar Valley Recycling and Transfer Co., County Waste Systems, Inc.,

Hawkeye Waste Systems, Inc., L & M Waste Systems, Inc., Metro Waste Systems, LLC, City

Waste Systems, Inc., and Tri-Star Waste Systems, Inc. from pyramiding federal employment

taxes; (B) reduce to judgment certain federal income tax and civil penalty (26 U.S.C. § 6672) assessments made against James L. Watts; and (C) to foreclose liens against real property (including two residences) and set aside the fraudulent transfers of the real property.  In support of this complaint, the United States alleges as follows:

### Jurisdiction and Venue

1.  This action is commenced at the request and with the authorization of a delegate of the Secretary of the Treasury and at the direction of the Attorney General pursuant to 26 U.S.C. §§ 7401 and 7402.

2.   Jurisdiction is conferred on this Court by 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1340 and 1345.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1396 in that the defendants reside or are located in this district and/or because a substantial part of the events or omissions giving rise to this action occurred within this district.

4.  Venue is also proper in this Court because the subject real property is located within this judicial district.

### Defendants

5.  Defendant James L. Watts ("Watts") resides in Bettendorf, Iowa, within this judicial district.

6.  Watts is the President and 100% shareholder of Watts Trucking Service, Inc., the parent company for all but two of the Employer Defendants named in this Complaint. Watts Trucking Service, Inc. was incorporated in Iowa, with a registered agent in Davenport, Iowa, within this judicial district.

7.  A-1 Disposal Service, Inc., a subsidiary of Watts Trucking Service, Inc., was incorporated in Iowa and conducts business in Cedar Rapids, Iowa, in the Northern District of Iowa. The registered agent for A-1 Disposal Service, Inc. is in Davenport, Iowa, within this judicial district.

8.  Black Hawk Waste Disposal Co., Inc., a subsidiary of Watts Trucking Service, Inc., was incorporated in Iowa and conducts business in Waterloo, Iowa, in the Northern District of Iowa. The registered agent for Black Hawk Waste Disposal Co., Inc. is in Davenport, Iowa, within this judicial district.

9.  Cedar Valley Recycling and Transfer Co., a subsidiary of Watts Trucking Service, Inc., was incorporated in Iowa and conducts business in Waterloo, Iowa, in the Northern District of Iowa. The registered agent for Cedar Valley Recycling and Transfer Co., is in Davenport, Iowa, within this judicial district.

10.  County Waste Systems, Inc. was incorporated in Iowa and is a subsidiary of Watts Trucking Service, Inc.

11.  Hawkeye Waste Systems, Inc., a subsidiary of Watts Trucking Service, Inc., was incorporated in Iowa and conducts business in Iowa City, Iowa, within this judicial district.

12.  L & M Waste Systems, Inc., a subsidiary of Watts Trucking Service, Inc., was incorporated in Iowa and conducts business in Muscatine, Iowa, within this judicial district.

13.  Metro Waste Systems, LLC is located in Missouri.

      a.     Metro Waste Systems, Inc. was a subsidiary of Watts Trucking Service, Inc., and was included on that corporation's 2010 corporate tax return.

      b.     On or around February 28, 2010, the IRS mailed approximately 200 levies

-3-

to Metro Waste System's Inc.'s accounts receivables.

c.      In April of 2010, Watts conveyed certain assets of Metro Waste Systems, Inc. to Metro Waste Systems, LLC, purportedly as a gift.

d.      The sole member of the LLC is Donald Kevin Russell, a former manager of Metro Waste Systems, Inc..

e.      Watts Trucking Service, Inc. handles the payroll for Metro Waste Systems, LLC.

f.      Metro Waste Systems, LLC, like its predecessor, continues to pyramid employment taxes.

14.  City Waste Systems, Inc. is a Nebraska domestic corporation. Jeffrey Watts, the nephew of Watts, began running City Waste Systems, Inc. in January of 2009, after entering into an informal agreement with Watts to purchase some assets of Central Waste Systems, Inc. Central Waste Systems, Inc. was a subsidiary included on the 2010 corporate tax return of Watts Trucking Service, Inc. City Waste Systems, Inc., like Central Waste Systems, Inc., continues to pyramid employment taxes.

15.  Tri-Star Waste Systems, Inc. is a Tennessee state corporation. It is a subsidiary of Watts Trucking Service, Inc., and was included on the 2010 Form 1120 for Watts Trucking Service, Inc.

16.  The Watts Family Lorton Residence Trust, a nominee of Watts, holds nominal title to real property located within this judicial district.

17.  The Watts Family Queens Drive Resident Trust, a nominee of Watts, holds nominal title to real property located within this judicial district.

18.   The Scott County Treasurer is named as a Defendant in this case because it may claim an interest in the real properties described in this Complaint.

19.   The Iowa Department of Revenue is named as a Defendant in this case because it may claim an interest in the real properties described in this Complaint.

**COUNT I:      Claim for Injunction**

20.   Section 7402(a) of the Internal Revenue Code, 26 U.S.C., authorizes courts to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws."  The remedies available to the United States under that statute "are in addition to and not exclusive of any and all other remedies."  26 U.S.C. § 7402(a).

21.   Watts and the Defendants described in paragraphs 6 to 15 of this Complaint (hereinafter "the Employer Defendants") are required by law to withhold from employees' wages federal income and Federal Insurance Contributions Act (FICA) taxes, and to pay over to the IRS those withholdings, along with the employer's own FICA and Federal Unemployment Tax Act (FUTA) taxes (collectively, "employment taxes").

22.   Since at least 1990 Watts and the Employer Defendants have repeatedly failed to comply with federal tax obligations by failing to timely pay federal employment and unemployment taxes.

23.   Watts and the Employer Defendants generally file the required federal employment tax returns (Forms 941), unemployment tax returns (Forms 940) as well as information returns that report income tax withholding on behalf of their employees. While the employees are credited with the withholdings reported to the IRS, Watts and the Employer Defendants generally fail to deposit the income taxes that are withheld from the employee's payroll wages. In fact,

-5-

Watts and the Employer Defendants have been "pyramiding" their employment taxes, or withholding those taxes from their employees while intentionally failing to pay them to the IRS.

24.  In addition to failing to fully pay the taxes withheld from their employees, Watts and the Employer Defendants continually fail to pay the employer's share of Form 941 employment taxes (FICA) and Form 940 unemployment taxes (FUTA).

25.  Watts controls the Employer Defendants. Over the past two decades, Watts has formed and controlled at least 23 different entities, most of which have accrued delinquent tax liabilities. The Employer Defendants, together with 15 inactive entities which are listed below in paragraph 36 owe the Treasury over $30 million dollars in unpaid federal employment and unemployment taxes.

26.  At various dates between 2004 and the present, a delegate of the Secretary of the Treasury timely made assessments against Defendant Watts Trucking Service, Inc. for unpaid Form 941 and 940 taxes and as of August 31, 2011, the unpaid balance, including tax and accruals, was $4,347,022.94.

27.  At various dates between 2009 and the present, a delegate of the Secretary of the Treasury timely made assessments against Defendant A-1 Disposal Service, Inc. for unpaid Form 941 and 940 taxes and as of August 31, 2011, the unpaid balance, including tax, interest, and accruals, was $65,025.60.

28.  At various dates between 2009 and the present, a delegate of the Secretary of the Treasury timely made assessments against Defendant Black Hawk Waste Disposal Co., Inc. for unpaid taxes and as of May 10, 2011, the unpaid balance, including tax, interest, and accruals, was $22,162.94. Due to the application of IRS levies, this Defendant currently does not owe an

unpaid balance.

29.  At various dates between 2009 and the present, a delegate of the Secretary of the Treasury timely made assessments against Defendant Cedar Valley Recycling and Transfer Co.. for unpaid taxes and as of May 10, 2011, the unpaid balance, including tax, interest, and accruals, was $19,040.32. Due to the application of IRS levies, this Defendant currently does not owe an unpaid balance.

30.  At various dates between 2007 and the present, a delegate of the Secretary of the Treasury timely made assessments against Defendant County Waste Systems, Inc. for unpaid Form 941 and 940 taxes and as of August 31, 2011, the unpaid balance, including tax, interest, and accruals, was $795,997.25.

31.  At various dates between 2008 and the present, a delegate of the Secretary of the Treasury timely made assessments against Defendant Hawkeye Waste Systems, Inc. for unpaid Form 941 and 940 taxes and as of August 31, 2011, the unpaid balance, including interest and other and accruals, was $126,775.21.

32.  At various dates in 2010 and 2011, a delegate of the Secretary of the Treasury timely made assessments against Defendant City Waste Systems, Inc. for unpaid Form 941 taxes, and as of August 31, 2011, the unpaid balance, including interest and accruals, was $22,630.81.

33.  At various dates between 2008 and the present, a delegate of the Secretary of the Treasury timely made assessments against Defendant L & M Waste Systems, Inc. for unpaid Form 941 and 940 taxes and as of August 31, 2011, the unpaid balance, including interest and accruals, was $135,658.67.

34.  A delegate of the Secretary of the Treasury timely made assessments

against Defendant Metro Waste Systems, LLC for unpaid Form 941 and 940 taxes and as of

August 31, 2011, the unpaid balance, including interest and accruals, was $74,508.62.

35. At various dates between 2004 and the present, a delegate of the Secretary of the

Treasury timely made assessments against Defendant Tri Star Waste Systems, Inc. for unpaid

Form 941 and 940 taxes and as of August 31, 2011 the unpaid balance, including tax and

accruals, was $1,812,391.61.

36. The damage to the government from Watts' years of pyramiding federal employment

taxes at the companies he has controlled is extensive. For example, at least 15 other entities,

many of which are now inactive or no longer operating, owe federal tax liabilities as a result of

Watts' conduct, the unpaid balance of which is described below:

| Inactive Employer | Balance Due, including interest and statutory additions, and levy proceeds or payments applied, as of May 10, 2011 |
| --- | --- |
| Bay Area Waste Systems, Inc. | $ 1,151,137.84 |
| Capitol Waste Systems, Inc. | $    727,517.00 |
| Central Waste Systems, Inc. | $ 2,225,754.00 |
| Creekmont Container Corporation | $ 1,251,596.93 |
| Delta Waste Systems, Inc. | $ 1,427,633.05 |
| Eastex Waste Systems, Inc. | $1,547,093.00 |
| ESG Watts, Inc. | $    127,025.41 |
| Gulf Road Development, Inc. | $    136,620.85 |
| Gulf Waste Systems, Inc. | $ 1,110,967.07 |
| Liberty Waste Systems, Inc. | $ 1,272,924.95 |
| Metro Waste Systems, Inc. | $ 1,291,208.88 |

| Overton Disposal Company | $      15,726.55 |
|---|---|
| Star Disposal Systems, Inc. | $ 4,149,982.26 |
| Texas Waste Systems, Inc. | $ 3,527,272.89 |
| Watts Freight Systems, Inc. | $ 3,315,428.00 |
| TOTAL | **$23,277,888.68** |

37.  Federal tax liens arose on the dates of assessment pursuant to 26 U.S.C. §§ 6321 and

6322 and attached to all property and all rights to property then belonging to the Employer

Defendants and the inactive entities and to property and rights to property that came into

existence thereafter.

38. The IRS has filed Notices of Federal Tax Lien against Watts Trucking and its

subsidiaries and has delivered numerous Notices of Intent to Levy to Watts Trucking and its

subsidiaries in this complaint, but the levy proceeds are not enough to obtain full payment of the

large tax liabilities.

39.  On at least two occasions, James Watts has transferred the assets of an entity that he

owns in order to begin pyramiding employment taxes through the new entity and stymie IRS

collection efforts.

40. Specifically, upon information and belief, in 2009 Jeffrey Watts, the nephew of James

Watts took over the business of Central Waste Disposal Systems ("Central") based on a verbal

agreement. In January of 2009, Jeffrey Watts began running Central Waste Disposal Systems

under the name City Waste Systems, Inc. At the time, Central owed over $2 million in

employment taxes and it was subject to numerous IRS levies.

41.  Upon information and belief, James Watts owns the real estate where the City Waste

Systems, Inc. business is located.

-9-

42.  In April of 2010, Watts made a purported gift of certain assets of Metro Waste Systems, Inc. to Metro Waste Systems, LLC. Metro Waste Systems, LLC is purportedly operated by Donald Russell, a former manager of Metro Waste Systems, Inc.

43.  At the time the assets were transferred, Metro Waste Systems, Inc. owed over $1.2 million in employment taxes and it was subject to numerous IRS levies.

44.  Due to the extremely large amount of tax liabilities owed by the Employer Defendants and Watts' inactive entities, the United States will likely never recover the lost revenue caused by their pyramiding of employment taxes.

45. As described in detail in Count II, the United States has also assessed Trust Fund Recovery Penalties pursuant to 26 U.S.C. § 6672, against Watts personally.

46.  Seizing the land where the Employer Defendants conduct business would not be sufficient to satisfy the employment tax liabilities because much of the land is contaminated and/or also encumbered by state tax liens.

47. Despite having filed notices of lien, served levies, and assessing Watts personally, Watts continues to pyramid employment taxes and the IRS is unable to bring James L. Watts, and the Employer Defendants into compliance with their employment tax obligations by administrative collection actions.

48.  An injunction by this Court ordering James L. Watts and the Employer Defendants to comply with the federal payroll tax requirements is necessary and appropriate for the following reasons:

      a.   The IRS has no adequate remedy at law other than an injunction because traditional collection methods have not and will not convince James L. Watts and

the Employer Defendants to stop pyramiding federal tax liabilities.

b.   The payroll tax liabilities of the defendants listed in sub-paragraph (a) continue to accrue.  Absent an injunction, based on the past tax history the Employer Defendants are likely to accrue additional unpaid employment taxes each quarter that the United States will not be able to collect.

c.   If Watts and the Employer Defendants are not enjoined the United States will continue to suffer irreparable injury. Defendants' conduct results in the loss of both the employer's FICA and FUTA tax contributions and the employees' FICA and federal income taxes. Absent an injunction, the IRS will have to devote substantial time and resources to attempt to collect the taxes owed and required to be paid over by the Employer Defendants.

d.   An injunction will compel Watts and the Employer Defendants to conduct business like every other tax-paying business in the country.  This will not result in an injury to them, but instead will compel them to comply with the nation's tax laws by filing the appropriate returns and paying taxes.

e.   Watts's and the Employer Defendants' failure to pay employment taxes gives them an unfair advantage over competitors and other businesses because it effectively obtains the same amount of labor as those competitors for less total payroll cost.  An injunction will protect the public's interest in fair competition by halting Defendants' unfair practices and thereby more effectively leveling the playing field.

49.  Watts and the Employer Defendants substantially interfere with the internal revenue

laws by continually failing to pay employment tax obligations required by 26 U.S.C. §§ 3102, 3111, 3301, and 3402.  An injunction is appropriate and necessary to prevent continued violations.

50.  The Court should order injunctive relief under 26 U.S.C. § 7402(a) against James L. Watts, Watts Trucking Service, Inc., A-1 Disposal Service, Inc., Black Hawk Waste Disposal Co., Inc., Cedar Valley Recycling and Transfer Co., County Waste Systems, Inc., Hawkeye Waste Systems, Inc., L & M Waste Systems, Inc., Metro Waste Systems, LLC, City Waste Systems, Inc., and Tri-Star Waste Systems, Inc.

WHEREFORE, the United States requests that the Court:

A.  Enter an injunction against James L. Watts, Watts Trucking Service, Inc., A-1 Disposal Service, Inc., Black Hawk Waste Disposal Co., Inc., Cedar Valley Recycling and Transfer Co., County Waste Systems, Inc., Hawkeye Waste Systems, Inc., L&M Waste Systems, Inc., Metro Waste Systems, LLC, City Waste Systems, Inc., and Tri-Star Waste Systems, Inc. requiring that they (individually and doing business under any other name or as any other entity):

(1)   Deposit withheld FICA and income taxes, as well as the employer's share of FICA taxes, in an appropriate federal depository bank in accordance with federal deposit regulations;

(2)   Deposit FUTA taxes in an appropriate federal depository bank in accordance with federal deposit regulations;

(3)   Sign and deliver to a designated IRS officer on the first day of each month an affidavit stating that the requisite withheld income, FICA and FUTA tax deposits were timely made;

(4)     Timely file all federal employment and unemployment returns (including Forms
        940 and 941) with the IRS;

(5)     Timely pay all required outstanding liabilities due with each tax return at the time
        the return is filed;

(6)     Be prohibited from making any disbursement or assigning any property from the
        date of payment of any wages until the amounts which are required to be withheld
        from the payment of those wages and the employer's share of FICA taxes related
        to those are wages are paid to the IRS;

(7)     Be prohibited from transferring any money or property to any other entity in order
        to have the salaries or wages of Defendants' employees paid by the transferee
        Employer;

(8)     Be prohibited from forming any new entity, or transferring any of the assets of an
        Employer Defendant to another entity, for any purpose, from the entry of a
        preliminary injunction in this case until the entry of a permanent injunction in this
        case;

(9)     Be prohibited from forming any new entity, or transferring any of the assets of an
        Employer Defendant to another entity, or assigning or transferring any property or
        property rights and from making any disbursements for any purpose from the
        entry of a permanent injunction in this case until the Employer Defendants'
        employment tax liabilities that accrue after entry of the permanent injunction are
        paid to the IRS.

**COUNT II:   Claim to Reduce § 6672 Assessments against Watts to Judgment**

51.  The United States incorporates by reference the allegations in paragraphs 1 through 50.

52.  26 U.S.C. § 6672 imposes liability on any person required to collect, truthfully account for, and pay over withheld federal income taxes, who willfully fails to do so, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof.

53.  Watts was a corporate officer of, and person responsible under section 6672 for, collecting, accounting for and paying over to the United States the taxes that were required to be withheld from the wages of the employees of the following entities: Watts Freight Systems Inc., Watts Disposal, Gulf Waste Systems Inc., Star Disposal Systems, Inc., State , A-1 Disposal Service, Inc., Metro Waste Systems, Inc., Creekmont Container Corporation, Black Hawk Waste Disposal Co. , Hawkeye Waste Systems, Inc., Cedar Valley Recycling and Transfer Co.,  Central Waste Systems, Inc., Eastex Waste Systems, Inc., Texas Waste Systems, Inc., Delta Waste Systems, Inc., Bay Area Waste Systems, Inc., Corkery Inc., County Waste Systems, Inc., Tri-Star Waste Systems, Inc., L & M Waste Systems Inc., Liberty Waste Systems, Inc., ESG Watts, GO-Disposal Inc., during the quarters for which that entity owed trust fund taxes and for which Watts was later assessed § 6672 penalties.

54.  Watts willfully failed to collect, account for, and pay over to the United States the taxes that the entities specified in paragraph 53 were required to pay over to the United States for the quarters specified in paragraph 55. In fact, Watts directed the payment of other expenses before the trust fund taxes for each of the companies listed in paragraph 53.

55.  On various dates for the quarters specified in the chart below, the Internal Revenue

Service made timely assessments against Watts for trust fund recovery penalties pursuant to 26

U.S.C. § 6672, the unpaid balance of which is currently $13,614,829.65:

| Tax Period | Amount of Assessments | Balance including adjustments, abatements and statutory accruals as of August 31, 2011 |
|---|---|---|
| June 2001 | $802,784.10 | $277,125.18 |
| September 2001 | $820,071.68 | $536,755.95 |
| December 2001 | $839,198.93 | $683,643.73 |
| March 2002 | $793,383.59 | $845,198.66 |
| June 2002 | $814,936.58 | $852,446.98 |
| March 2003 | $15,221.71 | $17,096.71 |
| June 2003 | $17,095.19 | $19,835.93 |
| September 2003 | $577,864.17 | $552,379.40 |
| December 2003 | $893,263.47 | $887,792.73 |
| March 2004 | $882,850.80 | $941,822.35 |
| June 2004 | $957,361.33 | $979,613.67 |
| September 2004 | $990,944.64 | $1,002,124.94 |
| December 2004 | $307,522.23 | $349,655.22 |
| March 2005 | $689,635.26 | $754,028.51 |
| June 2005 | $757,663.30 | $830,987.91 |
| September 2005 | $758,891.31 | $865,101.14 |
| December 2005 | $606,069.00 | $663,419.42 |
| March 2006 | $556,177.58 | $565,466.78 |
| June 2006 | $516,110.69 | $496,968.13 |
| September 2006 | $448,682.39 | $379,340.83 |

| | | |
|---|---|---|
| December 2006 | $440,962.80 | $336,291.47 |
| March 2007 | $381,037.44 | $255,160.14 |
| June 2007 | $303,545.75 | $232,976.85 |
| June 2008 | $84,541.62 | $89,073.37 |
| September 2008 | $133,658.04 | $106,373.05 |
| December 2008 | $74,016.58 | $36,011.95 |
| March 2009 | $80,685.98 | $29,488.80 |
| June 2009 | $75,083.91 | $28,649.85 |
| **Grand Total:** | | **$13,614,829.65** |

56.  Notices of the assessments described in paragraph 55 and demands for payment were sent to Watts by the IRS in accordance with the law.

57.  Despite notices and demands for payment of the assessments described in paragraph 55, Watts has neglected or refused to pay over the amounts assessed against him for trust fund recovery penalties.  There remains due and owing to the United States the sum of $13,614,829.65 as of August 31, 2011, plus statutory interest and additions that continue to accrue.

WHEREFORE, the United States requests that the Court enter judgment in favor of the United States and against James L. Watts for unpaid trust fund recovery penalties in the amount of $13,614,829.65 plus statutory additions accruing according to law after August 31, 2011.

Further, if the United States must use any of the remedies in subchapter B or C of the Federal Debt Collection Procedures Act (28 U.S.C. §§ 3101-3206) to collect its judgment, the United States requests to recover the 10% surcharge available under 28 U.S.C. § 3011.

**COUNT III: Claim to Reduce Federal Income Tax Assessments to Judgment.**

58.   The United States incorporates by reference the allegations in paragraphs 1 through 57.

59.   A delegate of the Secretary of the Treasury made lawful and timely assessments against James L. Watts for federal income taxes in the years and amounts described below:

| Tax Period Ending | Date | Amount and Type of Assessment | | Unpaid balance, including unassessed interest and accruals as of August 31, 2011 |
|---|---|---|---|---|
| 2004 | 8/20/2007 | Tax: | $   464,313.00 | |
| | | Est. Tax Penalty: | $       8,169.43 | |
| | | Late Filing Penalty: | $     68,174.77 | |
| | | Failure to Pay Penalty: | $     43,934.85 | |
| | | Interest: | $     66,908.10 | |
| | 6/7/2004 | Check Penalty: | $          312.40 | |
| | 10/5/2009 | Interest: | $     63,286.34 | |
| | | Failure to Pay Penalty: | $     31,640.08 | |
| | | | | $624,843.54 |

| 2005 | 8/20/2007 | Tax: | $ | 399,712.00 | |
| | | Est. Tax Penalty: | $ | 8,033.96 | |
| | | Late Filing Penalty: | $ | 49,552.20 | |
| | | Failure to Pay Penalty: | $ | 18,719.72 | |
| | | Interest: | $ | 28,035.43 | |
| | 10/5/2009 | Interest: | $ | 42,131.11 | |
| | | Failure to Pay Penalty: | $ | 36,338.28 | |
| | | | | | $433,866.62 |
| 2006 | 8/20/2007 | Tax: | $ | 128,737.00 | |
| | | Est. Tax Penalty: | $ | 6,092.34 | |
| | | Failure to Pay Penalty: | $ | 3,217.67 | |
| | | Interest: | $ | 3,632.57 | |
| | 10/5/2009 | Interest: | $ | 14,661.10 | |
| | | Failure to Pay Penalty: | $ | 28,315.54 | |
| | 11/1/2010 | Failure to Pay Penalty: | $ | 1,287.07 | |
| | | | | | $199,193.36 |

| 2007 | 6/2/2008 | Tax: | $ | 10,905.00 | |
| | | Est. Tax Penalty: | $ | 330.52 | |
| | | Late Filing Penalty: | $ | 485.55 | |
| | | Failure to Pay Penalty: | $ | 53.95 | |
| | | Interest: | $ | 31.95 | |
| | 6/16/2008 | Dishonored Ck Penalty: | $ | 225.62 | |
| | 10/12/2009 | Late Filing Penalty: | $ | 5,812.15 | |
| | | Accuracy Penalty: | $ | 17,032.80 | |
| | | Tax: | $ | 116,243.00 | |
| | 11/1/2010 | Failure to Pay Penalty: | $ | 17,755.14 | |
| | | | | | $204,761.28 |
| | | **Total:** | | | **$1,462,664.80** |

60.  Notices of the assessments described in paragraph 59 and demands for payment were sent to Watts by the IRS in accordance with the law.

61.  Despite notices and demands for payment of the assessments described in paragraph 59, Watts has neglected or refused to pay over the amounts assessed against him for federal income tax liabilities.  There remains due and owing to the United States the sum of $1,462,664.80, plus statutory interest and additions that continue to accrue from August 31, 2011, until paid.

WHEREFORE, the United States requests that the Court enter judgment in favor of the United States and against James L. Watts for unpaid federal tax liabilities in the amount of $1,462,664.80, plus statutory additions accruing according to law.

-19-

Further, if the United States must use any of the remedies in subchapter B or C of the Federal Debt Collection Procedures Act (28 U.S.C. §§ 3101-3206) to collect its judgment, the United States requests to recover the 10% surcharge available under 28 U.S.C. § 3011.

**COUNT IV:   Foreclosure of Federal Tax Liens Against the Property at Lorton Meadows**

62.  The United States incorporates by reference the allegations in paragraphs 1 through 61.

63.  The Watts Family Lorton Residence Trust, hereinafter ("Lorton Trust") is the record owner of real property that is located at 2808 Lorton Avenue in Davenport, Iowa, hereinafter ("Lorton Property") legally described as follows:

Lot 44 in Lorton Meadows Addition to the City of Davenport, Scott County, Iowa.

64.  Defendant James L. Watts purchased this property from Jerome and Annette Spero on November 4, 1997.

65.  On the same date, Watts gave a mortgage to Quad City Bank and Trust Company for the property in exchange for a promissory note in the amount of $63,750.00.[1]

66.  On May 19, 2003, the Internal Revenue Service made Trust Fund Recovery Assessments against Watts for the June 2001, September 2001, and March 2002 tax quarters.

67.  Liens for 6672 assessments for the June 2001, September 2001, and March 2002 tax periods arose on May 19, 2003 and attached to the Lorton Property.

---

[1]This mortgage has since been paid in full.

68. On December 4, 2003, Watts purportedly transferred the Lorton Property by quit claim deed to James L. Watts, Trustee of the Watts Family Lorton Trust for reported consideration of $1.00. That transfer was made subject to the IRS's federal tax liens.

69. Although, upon information and belief, Watts' son lives at the Lorton Property, Mr. Watts is the named insured beneficiary for the homeowner's insurance policy.

70. After Watts purportedly transferred the Lorton Property to the Lorton Trust, Mr. Watts or Watts Trucking has paid the real estate taxes, electric, and gas utility bills for the Lorton Property.

71. Federal tax liens for the trust fund recovery penalties and federal income taxes described in paragraphs 55 and 59 arose on the dates of assessment under 26 U.S.C. §§ 6321 and 6322 and attached to all property and all rights to property then belonging to Watts and to property and rights to property that came into existence thereafter.

72. On October 9, 2007, the Internal Revenue Service filed a Notice of Federal Tax Lien regarding the § 6672 liabilities in the name of the Lorton Trust as Nominee of James L. Watts.

73. The transfer by Watts to the Lorton Trust was not made in exchange for reasonably equivalent value of the property.

74. Watts exercises dominion and control over the Lorton Property.

75. Before the transfer, Watts knew that he had been assessed § 6672 tax liabilities by the United States and that he owed trust fund recovery penalties for the June 2001, September 2001, and March 2002 tax periods.

76. At the time of the transfer, Watts intended to incur, or believed or reasonably should have believed that he would incur further tax debts beyond his ability to pay as they became due.

77. The Lorton Trust holds the Lorton Property as Watts' nominee or alter ego.

78. Alternatively, Watts transferred the Lorton Property to the Lorton Trust in order to hinder and or delay the collection of his federal tax liabilities.

79. Watts is the true owner of the Lorton Property, and any other assets held in the name of the Lorton Trust.

WHEREFORE, the United States requests that the Court:

A. Determine that Watts is the true owner of the Lorton Property and that the United States has valid federal tax liens that attach to the Lorton Property, or alternatively;

B. Set aside as fraudulent Watts' transfer of the Lorton Property to the Lorton Trust; and

C. Enter judgment foreclosing the federal tax liens on the Lorton Property.

**COUNT IV:  Foreclosure of Federal Tax Liens Against the Property at 1909 Queens Drive**

80. The United States incorporates by reference the allegations in paragraphs 1 through 79.

81. The Watts Family Queens Drive Resident Trust is the record owner of real property at 1909 Queens Drive, Bettendorf, Iowa, hereinafter ("Queens Property") that is legally described as follows:

Lot 72 in Candlelight Park Second Addition to the City of Bettendorf, Scott County, Iowa.

-22-

82.  On November 13, 2003, Alcoa Employees & Community Credit Union transferred the property described above to James L. Watts, as trustee of the Watts Family Queens Drive Resident Trust ("Queens Trust").

83.  Watts and Watts Trucking obtained a loan to acquire the Queens Property.

84.  Upon information and belief, Watts' grandchildren and their mother live at the Queens Property.

85.  The Declaration of Trust for the Queens Trust declares that James L. Watts is the trustee of the trust and that his grandchildren are the beneficiaries of the trust.

86.  Watts has paid the real estate taxes for the Queens Property.

87. On October 9, 2007, the Internal Revenue Service filed a Notice of Federal Tax Lien regarding the § 6672 liabilities in the name of the Watts Family Queens Drive Residence Trust as Transferee, Nominee, and/or alter ego of James L. Watts.

88.  Watts exercises dominion and control over the property at the Queens Property.

89.  At the time that the Queens Property was obtained by the Queens Trust, Watts had incurred, and believed or reasonably should have believed that he would incur further tax debts beyond his ability to pay as they became due.

90. Watts caused the Queens Trust to obtain the Queens Property in order to hinder and or delay the collection of his federal tax liabilities.

91.  The Queens Trust holds the Queens Property as Watts' nominee or alter ego.

92.  Watts is the true owner of the Queens Property and any other assets held in the name

of the Queens Trust, and therefore, all of the tax liens against Watts attach to the Queens Property.

WHEREFORE, the United States requests that the Court:

A.   Determine that the Queens Trust is the nominee or alter ego of James Watts and that the United States has valid federal tax liens that attach to the Queens Property;

B.   Enter judgment foreclosing the federal tax liens on the Queens Property;

C.   Grant the United States its costs incurred in the commencement and prosecution of this entire action; and

D.   Grant the United States such other and further relief as the Court deems proper and just.

Dated: September 27, 2011

NICHOLAS A. KLINEFELDT
United States Attorney

*s/Miranda Bureau*
MIRANDA BUREAU
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 7238
Washington, DC  20044
Phone:  (202) 353-9171
Fax:  (202) 514-6770
Email:  Miranda.j.bureau@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2011, I caused the United States' First Amended Complaint to be served via Fedex on all Defendants in this case:

James R. Monroe
James R. Monroe Law Office
2115 Forest Avenue
Des Moines, IA 50311-3231

Mr. Bill Fennelly
Scott County Treasurer
Scott County Administrative Center
600 W. 4th Street
Davenport, IA 52801

Ms. Marcia Mason
Assistant Attorney General
Iowa Department of Revenue
Hoover State Office Building, 2nd Floor
Des Moines, IA 50319

City Waste Systems, Inc.
Jeffrey Watts, Registered Agent
796 Fort Crook Road South
Bellevue, NE 68005

Metro Waste Systems, LLC
Dan Wilke, Esquire
2708 Olive Street
Saint Louis, MO 63103

*s/Miranda Bureau*
MIRANDA BUREAU
Trial Attorney, Tax Division